UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| A.S., by and through her next friend, DOROTHY S., PLAINTIFF | * | CASE NO.__________________ |
| | * | JUDGE ________________________ |
| vs. | * | |
| VOICES FOR INTERNATIONAL BUSINESS AND EDUCATION, INC.; JOHN WHITE, Louisiana State Superintendent of Education in his official capacity; LOUISIANA DEPARTMENT OF EDUCATION; and LOUISIANA BOARD OF ELEMENTARY AND SECONDARY EDUCATION, DEFENDANTS | * | SECTION _________ MAGISTRATE JUDGE _________ DIVISION ________ |

**COMPLAINT**

## I. INTRODUCTION

1. Plaintiff, A.S., a minor child with a disability who is a resident of New Orleans, Louisiana and a student at the International High School of New Orleans ("IHS"), brings this action complaining of Defendants' violations of the Americans with Disabilities Act (hereafter "the ADA"), 42 U.S.C. § 12101 *et. seq.*, and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (hereafter "the Rehabilitation Act"). A.S. contends that programs, services, and benefits at the IHS are inaccessible to her because of her disabilities. A.S. seeks a declaratory judgment that Defendants are in violation of these statutes; a permanent injunction ordering that they come into compliance; and attorneys' fees and costs.

## II. PARTIES

2. A.S. is 15 years old. Among other disabilities, A.S. has Noonan Syndrome, a condition that, among other things, results in impairments in her musculoskeletal system, and which has caused deformity of her feet. These impairments adversely impact her balance and her ability to ambulate. A.S. is an individual with disabilities, as that term is used and defined in the ADA and the Rehabilitation Act. She is a resident of New Orleans, Louisiana.

3. Defendant Voices for International Business and Education, Inc. ("VIBE") is a Louisiana non-profit corporation. VIBE operates IHS pursuant to a "type 2" charter issued by the Louisiana Board of Elementary and Secondary Education.

4. Defendant VIBE is a recipient of federal financial assistance as that term is used and defined in the Rehabilitation Act.

5. Defendant VIBE is a is a public entity as that term is used and defined in Title II of the ADA, 42 U.S.C. § 12132.

6. Defendant John White is the Louisiana State Superintendent of Education. In that capacity, Mr. White serves as the executive head and chief administrative officer of the Louisiana Department of Education and has the responsibility for implementing education policies, and for the administration, control, and operation of the functions, programs, and affairs of the Louisiana Department of Education. La. Rev. Stat. § 36:644. Mr. White is named in his official capacity.

7. Defendant Louisiana Department of Education ("LDE") is a state agency that provides for the education of the people of the state of Louisiana and is the agency through with the state administers the functions of the state superintendent of education and the Board of Elementary and Secondary Education. La. Rev. Stat. § 36:642.

8. Defendant LDE is a public entity as that term is used and defined in Title II of the ADA, 42 U.S.C. § 12132; and a recipient of federal financial assistance as that term is used and defined in the Rehabilitation Act, 29 U.S.C. § 794.

9. Defendant Louisiana Board of Elementary and Secondary Education ("BESE") exercises supervision and control over the elementary and secondary schools and special schools under its jurisdiction. La. Rev. Stat. §17:6. BESE approves and enters into "Type 2" charters, under which nonprofit corporations operate public schools. La. Rev. Stat. § 17:3973.

10. Defendant BESE is a public entity as that term is used and defined in Title II of the ADA, 42 U.S.C. § 12132; and a recipient of federal financial assistance as that term is used and defined in the Rehabilitation Act, 29 U.S.C § 794.

## III. JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the ADA and the Rehabilitation Act, both of which are federal statutes.

12. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because defendant VIBE resides in this judicial district and because a substantial part of the events giving rise to the claim occurred in this district.

## IV. STATEMENT OF FACTS

13. A.S. and her family moved to New Orleans, Louisiana from California in April 2016.

14. Shortly after arriving in New Orleans, Dorothy S., A.S.'s mother and next friend, began looking for a suitable school for A.S.

15. Upon arriving in New Orleans, Dorothy S. took a number of steps to find a school for A.S., including going on New Orleans school district websites. After going on these websites, Ms. S. called a number indicated on one of the websites. She was given an appointment at a Family Service office, which she attended. There, she was given a list of schools, which she investigated online. After a careful review of the list, she selected ARISE, a charter school in New Orleans. In order to secure this placement for A.S. for the 2015-16 school year, Ms. S. went to Family Service office in New Orleans, where she was assisted in completing the necessary forms.

16. Eventually, in April 2016, Ms. S. placed A.S. in ARISE for the remainder of the 2015-2016 school year. However, ARISE is an elementary education school that only goes through grade eight. For the 2016-17 school year A.S. was scheduled to graduate to the ninth grade.

17. In her quest for an appropriate school for A.S. for the 2016-17 school year, Dorothy S. met with a counselor at ARISE. The counselor recommended three schools, including Ben Franklin and IHS. However, Ben Franklin school personnel advised Dorothy S. that A.S. would need to take a test in order to attend its program and, in any event, would not be able to attend during the 2016-17 school year. The

third school recommended to Ms. S. by the Arise counselor had no openings. As a result, Dorothy S. selected IHS for A.S.

18. A.S. began attending IHS as a ninth-grader in August 2016.

19. IHS operates as a public "type 2" charter high school.

20. Defendant BESE issued a charter to Defendant VIBE, the non-profit corporation that operates IHS, to offer public schooling in New Orleans.

21. According to its website, IHS's mission is to "educate and nurture a diverse learning community through the International Baccalaureate Programme, world languages, and intercultural appreciation to succeed in a global economy," and its "enrollment is open to all Louisiana residents."

22. IHS is housed in a three-story building in New Orleans. The majority of classes at IHS are held on the second and third floors.

23. There are no elevators in IHS. While there is a mechanical chair lift that at one time ran along the bannisters of a stairwell, this mechanical lift has not been operational during the time that A.S. has attended IHS and has been dismantled.

24. For much of her life, up to and including the time of her enrollment at IHS, A.S. has worn orthotics to keep her feet and legs stabilized and has had difficulty walking long distances or for extended amounts of time.

25. A.S. has undergone several surgeries on her feet over the course of her life.

26. At the beginning of this school year, from August through December 2016, A.S. would climb, with great difficulty, the steps to the second floor of IHS,

where she spent most of her day in a special education self-contained classroom. Her class is comprised of approximately seven students with disabilities.

27. A.S.'s art class is on the first floor, as are the school auditorium and cafeteria. When she needed to reach these areas, A.S. would again use the steps.

28. A.S. underwent surgery on December 15, 2016 to correct a prior surgical procedure. In December 2016, prior to the surgery, and four months after A.S. started at IHS, an IEP meeting was held where IHS staff advised Dorothy S. that A.S. should attend another school, as they did not have an elevator at IHS. IHS staff did not offer any accommodations that would enable A.S. to be educated with her peers or to be fully included in her educational program IHS following surgery.

29. Following the December 2016 surgery, A.S. recuperated at home over the course of her school's winter break. After school resumed on January 4, 2017, IHS provided homebound education beginning on January 14, 2017, which consisted of a teacher coming to the home twice a week for two hours per session. Homebound education, when necessitated due to healthcare treatment, is permitted pursuant to La. Admin Code. tit. 28, pt. CXV, § 1103 (E). Homebound education is one of the most restrictive programs offered by school districts.

.30. On February 1, 2017, Dorothy S. was told by A.S.'s doctor that A.S. would be sufficiently recovered from her December 15, 2016 surgery to return to school. A.S. would not, however, be able to climb stairs at that time.

31. A.S.'s mother on or about March 1, 2017, and again on April 4, 2017, provided the school district with three notes from A.S.'s doctor and his office that A.S. is unable to use the stairs at the school.

32. Despite repeated communications in which A.S. requested, through her mother or her attorneys, that IHS accommodate her by relocating her class of approximately seven students to an available room on the first floor, IHS refused to do so. IHS instead offered A.S. two options: continue her schooling at home, or go to school and receive instruction in the counselor's suite, an office area on the first floor of IHS.

33. Despite repeated communications with representatives of the LDE, through her mother or her attorneys, that IHS has failed to accommodate A.S. and permit her to receive her education with her peers, Defendants John White, LDE, and BESE have failed to take any steps to bring IHS in compliance with the ADA and the Rehabilitation Act.

34. Because A.S. is a student entitled to special education services under the Individuals with Disabilities in Education Act, 20 U.S.C. §1400 *et. seq*., 34 C.F.R. 300 *et. seq.*, IHS staff and teachers, in consultation with Ms. S., have developed an Individualized Educational Program ("IEP") for A.S.

35. A.S.'s IEP notes that she "is very social and wants to do well in the classroom," but "requires additional supervision in the general curriculum setting to assist with social integration."

36. Because Ms. S. considers it important for A.S. to spend as much time with her peers as possible, A.S. has attended school at the IHS building since March 13, 2017.

37. With the exception of her art class and lunch, A.S. spends the entire school day in the counselor's suite, an office suite located on the first floor. The

counselor's suite consists of two desks with computers to the right of the door. On the other side of the desks is a sofa, a table, two desks and a chair, where A.S. receives her education. Behind the desks are filing cabinets. Across from the filing cabinets are two desks that are used by the counselors.

38. Upon information and belief, except for when she is in her art class, or at lunch, her ability to interact with other students is mostly limited to one other student who also uses the area which A.S. is assigned, due to the student's physical inability to use the stairs.

39. While A.S. is sometimes able to sit at a school desk, at other times, such as when students were using the counselor's suite for registering for the SAT, A.S. has had to spend the school day on a couch in the counselor's office.

40. As a result of being confined to the counselor's suite for her education, the amount of teacher instruction A.S. receives during the day is very limited. Unlike other students in her school, during most of her school day she is instructed or proctored by a paraprofessional rather than a teacher. On more than one occasion, A.S. did not see her teacher at all during the course of the school day. On another occasion, she was left completely alone in her "classroom" for a period of approximately forty-five minutes.

41. Because the area in which A.S. receives instruction is an office, not a classroom, school personnel and students frequently move through the area, creating a noisy, distracting environment in which she is unable to learn.

42. By locating the only self-contained classroom for students with disabilities on the second floor, Defendants have imposed a barrier to all students

with mobility impairments seeking placement, or who, like the A.S., are currently placed at IHS.

43. On April 4, 2017, A.S. received a medical review at which her doctor predicted she would be able to climb steps no sooner than July, 2017. Shortly thereafter, this information was conveyed to both VIBE and LDE.

44. A.S. will undergo similar surgery on her left foot around August 2017. Her physician expects that she will be unable to climb steps following that surgery.

45. To be appropriate for some children, special education may need to extend longer than the traditional nine-month, 180-day school year.

46. Accordingly, the IDEA requires that public agencies ensure that extended school year services are available as necessary to provide Free Appropriate Public Education. 20 U.S.C. 1412(a)(1); 34 C.F.R. § 300.106.

47. Dorothy S. has requested that A.S. be provided with an extended school year program this summer.

## V. CAUSES OF ACTION

### A. TITLE II OF THE AMERICANS WITH DISABILITIES ACT – DEFENDANT VOICES FOR INTERNATIONAL AND BUSINESS EDUCATION, INC.

48. Plaintiff realleges and incorporates by reference each foregoing paragraph.

49. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

50. “Public entity” is defined to include “any department, agency, special purpose district, or other instrumentality of a State or States or local government.” 42. U.S.C. § 12131(1)(B).

51. In Louisiana, Charter schools are public schools that exist by charter authorized by Louisiana Board of Elementary and Secondary Education or another school board. Charter schools must comply with the federal laws governing disabled students-- the Individuals with Disabilities Education Act (IDEA), Section 504 of the Rehabilitation Act, and Title II of the Americans with Disabilities Act (ADA).

52. Because charter schools are public, attending students, as well as students seeking admission, are entitled to the exact same access rights as disabled students attending, or seeking admission, to traditional public schools.

53. By the actions described above, Defendant VIBE has discriminated and continues to discriminate against A.S. on the basis of her disability, in violation of the ADA, 28 C.F.R. § 35.130(b)(1)(i)-(iv), by

(i) Denying A.S. the opportunity to participate in or benefit from IHS's aids, benefits, or services;

(ii) Affording A.S. an opportunity to participate in or benefit from IHS's aids, benefits, or services that is not equal to that afforded others;

(iii) Providing A.S. with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others; and

(iv) Providing different and separate aids, benefits, or services to A.S. than are provided to others.

54. In failing and refusing to locate A.S.’s classroom in an area accessible to her, Defendant VIBE has failed to make reasonable modifications to

its policies, practices, or procedures, which are necessary to avoid discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(7)(i).

55. In failing and refusing to locate A.S.'s classroom in an area accessible to her, Defendant VIBE has violated and continues to violate the ADA by failing to ensure that "no qualified individual with a disability shall, because a public entity's facilities are inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of the services, programs, or activities, of a public entity, or be subjected to discrimination by any public entity." 28 C.F.R. § 35.149.

56. By the actions described above, Defendant VIBE has violated and continues to violate the ADA by failing to operate "each service program or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a).

**B. TITLE II OF THE AMERICANS WITH DISABILITIES ACT – DEFENDANTS JOHN WHITE, LOUISIANA DEPARTMENT OF EDUCATION, AND LOUISIANA BOARD OF ELEMENTARY AND SECONDARY EDUCATION**

57. Plaintiff re-alleges and incorporates by reference each foregoing paragraph.

58. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

59. "Public entity" is defined to include "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42. U.S.C. § 12131(1)(B).

60. By the actions described above, Defendants John White, LDE, and BESE have, directly or through contractual or licensing arrangements, discriminated and continue to discriminate against A.S. on the basis of her disability, in violation of the ADA, 28 C.F.R. § 35.130(b)(1)(i)-(v). by

(i) Denying A.S. the opportunity to participate in or benefit from IHS's aids, benefits, or services;

(ii) Affording A.S. an opportunity to participate in or benefit from IHS's aids, benefits, or services that is not equal to that afforded others;

(iii) Providing A.S. with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

(iv) Providing different and separate aids, benefits, or services to A.S. than are provided to others; and

(v) Aiding or perpetuating discrimination against A.S. by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's program.

61. In refusing to take necessary action to ensure that its contractor, VIBE, complies with the non-discrimination requirements of the ADA and locate A.S.'s classroom to a location accessible to her, Defendants John White, LDE, and BESE have aided and perpetuated discrimination against A.S. by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's program.

62. In refusing to take necessary action to ensure that its contractor, VIBE, complies with the non-discrimination requirements of the ADA and locate A.S.'s classroom to a location accessible to her, Defendants John White, LDE, and BESE have failed to make reasonable modifications to its policies, practices, or procedures, which are necessary to avoid discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(7)(i).

63. By the actions described above, Defendants John White, LDE, and BESE have violated and continue to violate the ADA by failing to ensure that "no qualified individual with a disability shall, because a public entity's facilities are inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of the services, programs, or activities, of a public entity, or be subjected to discrimination by any public entity." 28 C.F.R. § 35.149.

64. By the actions described above, Defendants John White, LDE, and BESE have violated and continue to violate the ADA by failing to operate "each service program or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a).

**C. SECTION 504 OF THE REHABILITATION ACT – ALL NAMED DEFENDANTS**

65. Plaintiff realleges and incorporates by reference each foregoing paragraph.

66. Section 504 of the Rehabilitation Act of 1973 provides that "no qualified individual with a disability . . . shall, solely by reason of her or his

disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

67. All named Defendants receive federal financial assistance for the purpose of providing public educational services.

68. By the actions described above, Defendants John White, LDE, and BESE, directly or through contractual arrangements, have discriminated and continue to discriminate against A.S. in violation of the Rehabilitation Act, 34 C.F.R. § 104.4(b)(i)-(v), by:

(i) Denying A.S. the opportunity to participate in or benefit from their aids, benefits, and services;

(ii) Affording A.S. an opportunity to participate in or benefit from the aids, benefits, and services offered at IHS that is not equal to that afforded others;

(iii) Providing A.S. with an aid, benefit, or service that is not as effective as that provided to others;

(iv) Providing A.S. with different or separate aids, benefits, or services;

(v) Aiding or perpetuating discrimination against A.S. by providing significant assistance to an agency, organization, or person that discriminates on the basis of handicap in providing any aid, benefit, or service to beneficiaries of the recipients' program or activity.

69. By the actions described above, all named Defendants have violated and continue to violate the Rehabilitation Act by failing to afford, or failing to ensure, that A.S. has "equal opportunity to [that provided to her peers without disabilities] to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate" to her needs. 34 C.F.R. § 104.4(2).

70. In locating its classrooms on inaccessible floors and refusing to take steps to accommodate A.S., VIBE has violated and continue to violate the Rehabilitation Act, which prohibits a recipient of federal financial assistance from, "in determining the site or location of a facility . . . mak[ing] selections (i) that have the effect of excluding handicapped persons from, denying them the benefits of, or otherwise subjecting them to discrimination under any program that receives Federal financial assistance or (ii)that have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the program or activity with respect to handicapped persons." 34 C.F.R. § 104.4(b)(5).

71. In failing to ensure that VIBE locates its classrooms on accessible floors and by refusing to take steps to accommodate A.S., Defendants John White, LDE, and BESE have violated and continue to violate the Rehabilitation Act, which prohibits a recipient of federal financial assistance from, "in determining the site or location of a facility . . . mak[ing] selections (i) that have the effect of excluding handicapped persons from, denying them the benefits of, or otherwise subjecting them to discrimination under any program that receives Federal financial assistance or (ii)that have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the program or activity with respect to handicapped persons." 34 C.F.R. § 104.4(b)(5).

72. By refusing to relocate A.S.'s classroom to an accessible location, Defendant VIBE has violated and continue to violate the Rehabilitation Act by failing to ensure that "no qualified handicapped person shall, because a recipient's facilities are inaccessible to or unusable by handicapped persons, be denied the benefits of,

be excluded from participation in, or otherwise be subjected to discrimination" in the programs or activities provided at IHS. 34 C.F.R. § 104.21.

73. By their failure to ensure through its contractual arrangements that VIBE relocate A.S.'s classroom to an accessible location, Defendants John White, LDE, and BESE have violated and continue to violate the Rehabilitation Act by failing to ensure that "no qualified handicapped person shall, because a recipient's facilities are inaccessible to or unusable by handicapped persons, be denied the benefits of, be excluded from participation in, or otherwise be subjected to discrimination" in the programs or activities provided at IHS. 34 C.F.R. § 104.21.

74. VIBE's failure and refusal to relocate A.S.'s classroom to an accessible location, and Defendants John White, LDE, and BESE failure to ensure that her classroom would be in an accessible location, violate and continue to violate the Rehabilitation Act in that Defendants' programs or activities, when each part is viewed in its entirety, are not readily accessible to handicapped persons. 34 C.F.R. § 104.22(a)-(b).

INJUNCTIVE RELIEF

75. Because, absent such relief, A.S. will continue to experience unlawful discrimination as a result of Defendants' failure to comply with Titles II of the ADA and the Rehabilitation Act, injunctive relief is necessary in order to require Defendants to relocate A.S.'s classroom to an accessible location, or otherwise ensure the accessibility of its programs and activities.

76. Moreover, there are reasonable grounds to believe that Defendants will continue to engage in acts and practices prohibited by these statutes.

DECLARATORY RELIEF

77. Plaintiff is also entitled to a declaratory judgment concerning each of Defendants' statutory violations and specifying the rights of Plaintiff as to Defendants' program, activities, and services.

ATTORNEYS' FEES AND COSTS

78. In order to enforce her rights under the ADA and the Rehabilitation Act, Plaintiff has had to retain counsel and is therefore entitled to recover attorney fees, costs, and expenses.

## VI. PRAYERS FOR RELIEF

79. Therefore, Plaintiff requests that the Court:

A. Issue a temporary restraining order, preliminary injunction and a permanent injunction, requiring Defendants, its agents, servants, and employees, and all persons in active concert with Defendants, to make all necessary modifications to their programs, services, and activities offered, that prevent ready access to, and use by, the Plaintiff, and enjoining them from violating Title II of the ADA and the Rehabilitation Act by discriminating against Plaintiff in her utilization of Defendants' programs, services, and activities.

B. Enter a declaratory judgment, specifying Defendants' statutory violations and declaring the rights of the Plaintiff as to the Defendants' programs, services, and activities.

C. Find that Plaintiff is the prevailing party in this case and award her damages, attorney fees, costs, and expenses; and

D. Order such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted, this 28th Day of April, 2017,

**A.S., by and through her next friend, DOROTHY S.**

By their attorneys,

/s/ Kenneth Kolb
Kenneth Kolb, Bar No. 18290
kkolb@advocacyla.org

/s/ Debra Weinberg
Debra Weinberg, Bar No. 32760
dweinberg@advocacyla.org

/s/ Ronald K. Lospennato
Ronald K. Lospennato, Bar No. 32191
rlospennato@advocacyla.org

**THE ADVOCACY CENTER OF LOUISIANA**
8325 Oak St.
New Orleans, LA 70118 -2043
504-522-2337
504-522-5507 (Facsimile)